IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CLINTON SEAN ROYSE, | ) | CASE NO. 24-10524 JDL |
| | ) | Chapter 7 |
| Debtor. | ) | |

| | | |
|---|---|---|
| VISION BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No.: _____ |
| | ) | |
| CLINTON SEAN ROYSE, | ) | |
| | ) | |
| Defendant | | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

COMES NOW, the Plaintiff, Vision Bank ("Vision Bank" or "Plaintiff") by and through its attorneys, and for its cause of action against Defendant, Clinton Sean Royse ("Mr. Royse" or "Defendant"), states as follows:

**INTRODUCTION AND JURISDICTION**

1. Pursuant to FRCP 7008, Plaintiff consents to the entry of a final order and judgment in this adversary action.

2. On March 4, 2024, Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the above-captioned bankruptcy case ("Bankruptcy Case"). Plaintiff is a named creditor in the Bankruptcy Case.

3. An initial 341 hearing was begun on April 3, 2024, and continued to April 17, 2024, whereupon it was concluded.

4. This is an action under 11 U.S.C. § 523 for a determination excepting from

discharge a debt owed Plaintiff.

5. The Court has jurisdiction over this matter under 28 U.S.C. § 1334, and this Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6. Venue is proper under 28 U.S.C. § 1409(a).

## BACKGROUND

7. Vision Bank realleges and incorporates by reference each of the above statements and allegations as if fully set forth herein.

8. On or around March 2020, Mr. Royse purchased Tim Mills Fence Co.

9. Prior to Mr. Royse's acquisition of Tim Mills Fence Co., the company had an established reputation in the community as a successful construction business. Vision Bank was aware of the reputation of Tim Mills Fence Co.

10. Shortly after the purchase, Mr. Royse formed Royse Construction, L.L.C. d/b/a Tim Mills Fence Co. ("Royse Construction") as a new venture under new ownership but with the goodwill and reputation of the former Tim Mills Fence Co.

11. In order to maintain the daily operations of Royse Construction, Mr. Royse approached Vision Bank in 2020 and requested a $250,000.00 line of credit for Royse Construction ("LOC").

12. On or around September 1, 2020, aware of the former profitability of Tim Mills Fence Co. and its belief that under new ownership the business would continue to thrive, Vision Bank made the LOC available to Mr. Royse and Royse Construction through a Promissory Note and related loan agreements (collectively "LOC Agreement").

13. On or around this same day, as part of the Loan, and to secure the performance of Royse Construction, Mr. Royse executed a Commercial Guaranty, personally guaranteeing the

LOC Agreement, including all of Royse Construction's obligations under the LOC Agreement, and the full and punctual payment and satisfaction of the indebtedness under the LOC Agreement.

14. In order to obtain the LOC, Mr. Royse affirmatively covenanted to Vision Bank in the LOC Agreement that all funds from the LOC would be used solely for the business operations of Royse Construction.

15. Royse Construction subsequently defaulted on the Loan by failing to timely pay and became indebted to Vision Bank in an amount exceeding $165,000.00.

16. In accordance with the Commercial Guaranty, Mr. Royse personally guaranteed the LOC Agreement, including all is personally indebted to Vision Bank and liable for the for the entirety of the balance of the Loan.

17. Unbeknownst to Vision Bank, on August 14, 2020, Mr. Royse, Jason Quigley, and Melissa Quigley formed or caused to be formed with the Oklahoma Secretary of State, Teton Healing Company, L.L.C. ("Teton"), a medical marijuana cultivation company.

18. On August 26, 2020, Mr. Royse, Jason Quigley, and Melissa Quigley executed an Operating Agreement for Teton, reflecting that Mr. Royse owned a 25% membership interest in Teton.

19. On September 11, 2020, the full $250,000.00 LOC for Royse Construction became available to Mr. Royse for draws for the business' operations.

20. After Royse Construction and Mr. Royse defaulted on the Loan, Vision Bank discovered that Mr. Royse had used over $98,000.00 of the LOC to purchase property, construct improvements, and pay operating expenses for Teton ("Teton Expenditures").

21. The Teton Expenditures had no legitimate business affiliation with Royse Construction nor its daily operation.

22. Upon information and belief, in addition to the Teton Expenditures, Mr. Royse used additional funds from the LOC for purposes that had no legitimate business affiliation with Royse Construction nor its daily operation.

## FIRST CAUSE OF ACTION
### False Pretenses, False Representations, and Fraud
### 11 U.S.C. § 523(a)(2)(A)

23. Vision Bank realleges and incorporates by reference each of the above statements and allegations as if fully set forth herein.

24. On or about September 1, 2020, Mr. Royse falsely represented to Vision Bank that all funds from the LOC would be used solely for the business operations of Royse Construction.

25. At the time Mr. Royse obtained the LOC, he knew that not all funds from the LOC would be used solely for the business operations of Royse Construction.

26. Mr. Royse's false representation amounts to actual fraud.

27. Vision Bank relied on Mr. Royse's false representation when it agreed to loan money to Royse Construction.

28. Vision Bank's reliance on Mr. Royse's false representation that all monies loaned to Royse Construction under the LOC would be used solely for the business operations of Royse Construction was justifiable.

29. But for Mr. Royse's false representation and fraud, Vision Bank would not have loaned the money to Royse Construction.

30. The debt owed Vision Bank under the LOC Agreement arose from Mr. Royse's false representation and fraud.

31. As a proximate result of Mr. Royse's false representation and fraud, Vision Bank has been damaged in an amount exceeding $165,000.00.

4

32. Based upon Mr. Royse's fraudulent conduct, his debt to Vision Bank is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for damages as follows:

1. A determination that Defendant's debt to Plaintiff under the LOC Agreement is non-dischargeable under 11 U.S.C. § 523(a)(2)(A); and

2. Such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

*s/ Wyatt D. Swinford*
Wyatt D. Swinford, OBA No. 32520
Brady R. Lippoldt, OBA No. 35168
Elias, Books, Brown & Nelson, P.C.
Two Leadership Square, Suite 1300
211 N. Robinson Avenue
Oklahoma City, Oklahoma  73102
Telephone: 405/232-3722
Facsimile: 405/232-3746
Email: wswinford@eliasbooks.com
Email: blippoldt@eliasbooks.com

**ATTORNEYS FOR VISION BANK**